```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

ELIZABETH ZEMBKO,                :

    Plaintiff,             :

v.                               :           No. 3:05CV918(AHN)

NORTHWESTERN MUTUAL LIFE         :
INSURANCE COMPANY,

    Defendant.             :

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Elizabeth Zembko ("Zembko") brings this action against defendant Northwestern Mutual Life Insurance Company ("Northwestern"), seeking damages for breach of contract, breach of implied duty of good faith and fair dealing, and negligent infliction of mental and emotional distress. The case involves three disability income insurance policies that Northwestern issued to Zembko. Zembko applied for disability benefits under the policies, and Northwestern denied her claim. Zembko initially filed this action against Northwestern in Connecticut state court. Northwestern removed it to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Pending before the court is Northwestern's motion for summary judgment [doc. # 39] pursuant to Fed. R. Civ. P. 56. Northwestern seeks judgment on Zembko's complaint as a matter of law on the grounds that, based upon the undisputed material facts, it acted properly in denying Zembko's claim for disability under the policies at issue.

For the following reasons, Northwestern's motion for summary judgment is GRANTED.

## FACTS

In opposing Northwestern's motion for summary judgment, Zembko failed to file a Local Rule 56(a)2 statement. Accordingly, the following material facts set forth in the defendant's Rule 56(a)1 statement are deemed admitted. See D. Conn. Local Civ. R. 56(a)1; Sanchez v. Univ. of Conn. Health Care, 292 F. Supp. 2d 385, 390 (D. Conn. 2003).

Northwestern issued three disability income insurance policies to Zembko, a former attorney and partner at Ericson, Scalise, Mangan & Zembko ("Ericson Scalise") in New Britain, Connecticut: (1) policy no. D 833 511, issued on or about July 12, 1991; (2) policy no. D1 103 873, issued on or about February 12, 1994; and (3) policy no. D1 029 744, issued on or about February 12, 1995 ("the Policies"). All three Policies contain the same language regarding when Northwestern's obligation to pay benefits and defining key terms. Specifically, the Policies provide that benefits are only payable if:

- the Insured becomes disabled while [the] policy is in force;
- the Insured is under the Regular Care of a Licensed Physician during disability;
- the disability results from an accident that occurs or a sickness that first appears while [the] policy is in force; and
- the disability is not excluded under Section 3.

As for the insured's employment status at the time of the

disability, the Policies state:

> The words "regular occupation" mean the occupation of the Insured at the time the Insured becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time the disability starts will be combined together to be "the regular occupation."

The Policies also set forth what constitutes "disability:"

> . . . the Insured is totally disabled when unable to perform the principal duties of the regular occupation. After the Initial Period, the Insured is totally disabled when both unable to perform the principal duties of the regular occupation and not gainfully employed in any occupation. If the Insured can perform one or more of the principal duties of the regular occupation, the Insured is not totally disabled; however, the Insured may qualify as partially disabled.

In 1987, Zembko began to suffer from anxiety and had her first panic attack. Shortly thereafter she began taking Ativan to control her anxiety and continued to take that medication until February 10, 2006. During the mid to late 1990's, Zembko began to suffer from depression. Nonetheless, Zembko never missed a day of work due to her anxiety or depression, nor did she suffer any loss of income as a result of either condition. She considered herself to be the hardest worker at Ericson Scalise and never told her colleagues, clients, or health care providers that she was unable to perform her duties as an attorney due to her anxiety or depression.

In connection with an internal investigation conducted by Ericson Scalise in 2003, the firm discovered that Zembko had misappropriated client funds. As a result, at the end of

November 2003, Ericson Scalise served a restraining order on Zembko, and officially terminated her employment in December 2003. That same month, Ericson Scalise filed a civil lawsuit against Zembko for embezzling client funds. It also filed a grievance against her with the Connecticut Statewide Grievance Committee, seeking the suspension of her license to practice law.

After her termination from Ericson Scalise, Zembko continued to practice law. In connection with her law practice in West Hartford, she advised clients on legal matters, supervised the execution of wills, signed documents as a commissioner of the superior court, and prepared an application for benefits. She stated that she would not have practiced law during this time if she felt that she was not capable of providing competent legal services to her clients.

In February 2004, the Connecticut Statewide Grievance Committee suspended Zembko's license to practice law.

On March 3, 2004, Zembko applied for disability benefits under the Policies, claiming that she became disabled on December 1, 2003.

Zembko was charged with larceny in May 2004 for allegedly diverting thousands of dollars in client funds to her own bank account.

Northwestern notified Zembko on July 21, 2004 that it had denied her claim for disability benefits on the grounds that her

inability to perform the principal duties of her occupation was directly attributable to the suspension of her license and criminal problems rather than an accident or sickness, and thus she was not disabled under the terms of the Policies.

Thereafter, on November 18, 2005, Zembko pleaded guilty to three counts of larceny in the first degree and two counts of larceny in the second degree.

On January 19, 2006, Zembko resigned from the practice of law and agreed not to reapply for a law license.

On February 10, 2006, Zembko was sentenced to fifteen years in prison, suspended after five years, followed by five years of probation. Zembko served approximately three months at York Correctional Institution in Niantic, Connecticut. The Department of Correction then transferred her to Hartford House, a halfway house for women located in Hartford, Connecticut.

## STANDARD

A Rule 56 motion for summary judgment may be granted if the court determines that the moving party is entitled to judgment as a matter of law because there are no genuine issues of material fact to be tried. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d

5

Cir. 1995). After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 883-85 (1990); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a Rule 56 motion, the court's responsibility is not to resolve disputed issues of fact, but rather to assess whether there are any factual issues to be tried, while resolving all ambiguities and drawing all reasonable inferences against the moving party. See Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir.1995).

The substantive law governing a particular case identifies those facts that are material with respect to a motion for summary judgment. See Anderson, 477 U.S. at 248. A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." Miner v. Glen Falls, 999 F.2d 655, 661

6

(2d Cir. 1993) (citation omitted).

## DISCUSSION

Zembko claims that Northwestern wrongfully denied her claim for benefits under the Policies because she is totally disabled and unable to perofrm the regular duties of her occupation as a result of her depression and anxiety. Northwestern argues that Zembko cannot prevail on her claims for breach of contract, breach of implied duty of good faith and fair dealing and negligent infliction of emotional distress because she lost her license to practice law.

A.  Breach of Contract

Zembko asserts that Northwestern breached its contract when it wrongfully denied her claim for benefits under the Policies. She maintains that she is disabled within the meaning of the Policies because she is unable to work as an attorney due to her depression and anxiety. Northwestern counters that Zembko's inability to work as an attorney is directly related to and caused by the suspension and revocation of her law license and her criminal conviction. The court agrees that Zembko's inability to practice law is a direct result of the suspension and revocation her law license, not because of a covered disability under the Policies.

Although Northwestern would be bound to pay disability benefits to Zembko if she were unable to practice law due to a

covered accident or illness, the Second Circuit has made it clear that, under Connecticut law, "[a]n insurance company is not liable for a loss of earned income that results from a license suspension or other consequences of an insured's behavior." Massachusetts Mutual Life Ins. Co. v. Millstein, 129 F.3d 688, 690 (2d Cir. 1997). In Millstein, the court held that an insurance company had no duty to pay under a disability policy issued to an attorney who suffered from a drug addiction and conduct disorder, where the attorney diverted funds from his clients' trust accounts and caused the Statewide Grievance Committee to suspend his license to practice law. Id. at 691. The court noted that the only reason the insured attorney was incapable of performing his occupation was because of the legal restrictions that the Statewide Grievance Committee, and later the sentencing court in his related criminal case, placed on him. Id. The court contrasted a situation in which an illness precluded a person from engaging in his regular occupation, as opposed to a person who was unable to engage in his regular occupation because of criminal conduct that resulted in his license revocation or criminal conviction. Id. The court stated: "a rule which would allow a lawyer to steal from his clients, even when such theft occurs in the throes of a drug addiction, and then recover disability benefits for income lost due to the [license] suspension resulting from such theft, would

be against public policy." Id. Other states agree with the Second Circuit's reasoning. See Massachusetts Mutual Life Ins. Co. v. Ouellette, 617 A.2d 132 (Vt. 1992) (finding that an insurance company had no contractual obligation to pay disability benefits to an optometrist who was unable to perform his regular occupation because he was convicted on charges of pedophilia); Goomar v. Centennial Life Ins. Co., 855 F. Supp. 319 (S.D. Cal. 1994) (finding that a physician was unable to practice medicine because his medical license was revoked for molesting female patients, not because he suffered from a psychosis); Grayboyes v. General American Life Ins. Co., 1995 WL 156040, (E.D. Pa. 1995), aff'd, 74 F.3d 1226 (3d Cir. 1995) (finding that if the plaintiff's orthodontic license had not been suspended for frotteurism, the plaintiff would still be able to perform the material duties of his profession and was therefore not totally disabled within the definition of the insurance company's disability policy).

Zembko's attempt to distinguish Millstein on the grounds that the attorney's behavior in that case was intentional, i.e., he intended to abuse drugs, whereas her depression was

involuntary in nature, is unavailing.[1]  The court in <u>Millstein</u> explicitly stated that the attorney's behavior occurred while "in the throes of a drug addiction."  <u>Millstein</u>, 129 F.3d at 691. The court did not characterize his addiction as intentional; rather, his criminal behavior while he was addicted to drugs was intentional.  The court stated:

> There is an important difference between an impairment which results in an inability to perform the physical or mental functions necessary to engage in substantial gainful activity on the one hand and antisocial behavior which results in confinement [or license revocation] on the other.  In the latter case, it is confinement [or revocation] rather than the impairment which precludes the individual from engaging in substantial gainful activity.

<u>Id.</u>

---

[1] Zembko's attempt to distinguish <u>Millstein</u>'s holding on the grounds that unlike the plaintiff in <u>Millstein</u>, whose license was revoked, Zembko voluntarily gave up her law license due to her illness.  Not only is Zembko's argument legally unavailing, it is factually unsupported.  Zembko relies on an unsworn letter prepared by her psychiatrist, Dr. Thelisa Harris.  However, as the Second Circuit has held, unsworn letters from physicians are generally considered to be inadmissible hearsay and are insufficient to oppose a motion for summary judgment.  <u>See Capobianco v. City of New York</u>, 422 F.3d 47, 55 (2d Cir. 2005); Fed. R. Civ. P. 56(e).  Further, a nonmovant's "self-serving conclusory statements" that dispute the movant's evidence cannot create material issues of fact to avoid summary judgment.  <u>All-American Petroleum Corp. v. Kovac</u>, 259 B.R. 6, 16 (E.D.N.Y. 2001).  Thus, Zembko's unsupported factual assertion is insufficient to outweigh the undisputed facts before the court that establish that Ericson Scalise filed a complaint against Zembko with the Statewide Grievance Committee, and that Zembko admitted under oath that her license was first suspended and then later revoked pursuant to her plea agreement.  Nonetheless, whether Zembko acted voluntarily is immaterial; the fact remains that she is unable to work as an attorney because her license was suspended and later revoked.

Zembko's flawed reasoning ignores the plain holding in Millstein, as well as the fact that, like the Millstein plaintiff her criminal conduct was also intentional. Moreover, in this case, as in Millstein, the undisputed facts establish that Zembko suffered for many years from the ailments that she now claims caused her disability, but despite those ailments she was able to, and did, practice law until the Statewide Grievance Committee suspended and then revoked her license. Indeed, Zembko practiced law for seventeen years, from 1987 until 2004, and never missed a day of work as a result of her illnesses. She further admitted that she would still be practicing law today if her law license had not been revoked. As in Millstein, Zembko's inability to perform her regular occupation was not caused by her illnesses, but from her criminal conduct that resulted in the loss of her law license. Thus, there is no causal connection between her inability to practice law and her depression and anxiety.

Accordingly, Northwestern did not breach its contract by denying Zembko's claim for benefits under the Policies on the grounds that it was her intentional, criminal conduct that caused her inability to practice law, not her illnesses. This conclusion is consistent with and compelled by the public policy reasons set forth in Millstein. See Millstein, 129 F.3d at 692. Northwestern's motion for summary judgment on this claim is granted as a matter of law.

11

B.   Breach of Implied Duty of Good Faith and Fair Dealing

Zembko also claims that Northwestern breached the implied covenant of good faith and fair dealing by denying her application for disability benefits.[2]  This claim is without merit.

In Connecticut, to prevail on a claim of breach of implied duty of good faith and fair dealing, Zembko must prove three elements: (1) that two parties enter into a contract from which the plaintiff reasonably expects to benefit; (2) that the defendant's actions damaged the benefit of the contract; and (3) that the defendant's bad faith caused the damage.  Owen v. Georgia-Pacific Corp., 389 F. Supp. 2d 382, 393 (D. Conn. 2005). Bad faith is defined as "a state of mind affirmatively operating with furtive design or ill will . . . ," Buckman v. People's Express, Inc., 205 Conn. 166, 171 (1987), and requires a sinister or dishonest purpose, see Owen, 389 F. Supp. 2d at 394; Franco v. Yale Univ., 238 F. Supp. 2d 449, 455 (D. Conn. 2002).

Zembko has failed to submit any evidence suggesting that Northwestern was motivated by a sinister or dishonest purpose when it denied her claim for disability benefits.  According to the terms of the Policies as well as public policy considerations, Northwestern had no contractual obligation to

---

[2] Zembko does not address this claim in her memorandum in opposition.

honor Zembko's claim for disability benefits, and its denial of her claim was reasonable. As noted above, Zembko is no longer able to perform her regular occupation as an attorney because her license to practice law was revoked, not as a result of her illness. Accordingly, Northwestern did not breach its implied duty of good faith and fair dealing and Northwestern's motion for summary judgment on this claim is granted as a matter of law.

C.  Negligent Infliction of Emotional Distress

Zembko also alleges that Northwestern's wrongful denial of disability benefits caused her emotional distress, pain and aguish.[3] To prove this claim, Zembko must establish that: "(1) [Northwestern]'s conduct created an unreasonable risk of causing [her] emotional distress; (2) [her] distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) [Northwestern]'s conduct was the cause of her distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003). Zembko has failed to establish any of these elements.

Because Northwestern's denial of her claim for benefits was not wrongful, Zembko cannot, as a matter of law, succeed on her claim for negligent infliction of emotional distress. See Gore v. Colonial Penn Ins. Co., 335 F. Supp. 2d 296, 311 (D. Conn.

---

[3] Zembko does not address this claim in her memorandum in opposition.

2004) (holding that when an insurance company has reasonable grounds to justify the denial of an insured's claim, and the insured fails to present evidence as to how the insurance company's denial procedure was unfair, the insured cannot establish a negligent infliction of emotional distress claim). Northwestern's motion for summary judgment on this claim is also granted.

## CONCLUSION

For the foregoing reasons, Northwestern's motion for summary judgment [doc. # 39] is GRANTED. The Clerk shall enter judgment for Northwestern and close the case.

SO ORDERED this _23_ day of March 2007, at Bridgeport, Connecticut.

_____/s/_____
Alan H. Nevas
United States District Judge